## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

IGNITE ENTERPRISE SOFTWARE
SOLUTIONS, LLC and IGNITETECH CX
SOLUTIONS, LLC

      Plaintiffs,

v.

NGDATA, US INC. and NGDATA N.V.,

      Defendants.

C.A. No. 23-cv-01209-JFM

**JURY TRIAL DEMANDED**

---

### DEFENDANT NGDATA US INC.'s
### OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE
### FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

FISH & RICHARDSON P.C.
Warren K. Mabey, Jr. (#5775)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
(302) 652-5070 (Telephone)
mabey@fr.com

Bret T. Winterle
Carl E. Bruce
Michael A. Vincent
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
winterle@fr.com
bruce@fr.com
vincent@fr.com

***ATTORNEYS FOR DEFENDANT
NGDATA US, INC.***

Dated: March 5, 2024

## <u>TABLE OF CONTENTS</u>

Page(s)

I.  NATURE AND STAGE OF PROCEEDINGS ........................................................1

II. SUMMARY OF ARGUMENT ............................................................................1

III. STATEMENT OF FACTS ...................................................................................1

    A.  The Accused Lily System ..........................................................................1

    B.  The '726 Patent ..........................................................................................1

    C.  The '441 Patent ..........................................................................................2

    D.  The '134 Patent ..........................................................................................2

    E.  The '340 Patent ..........................................................................................2

IV. LEGAL STANDARDS ........................................................................................3

    A.  Fed. R. Civ. P. 12(b)(6) ............................................................................3

    B.  35 U.S.C. § 101 .........................................................................................3

V.  ARGUMENT ........................................................................................................5

    A.  The Amended Complaint Fails to Plausibly Allege Patent Infringement ..............................................................................................5

        1.  The '726 Patent's "restructuring" limitation....................................5

        2.  The '441 Patent's "generating . . . a second structure for the single web site" limitation.........................................................8

        3.  The '134 Patent's "predefined first sequence of user accesses to two or more of the plurality of states" limitation .....................................................................................9

        4.  The '340 Patent's "presentation model" and "snapshot" limitations ......................................................................................10

    B.  The Asserted Patents are Invalid under 35 U.S.C. § 101...........................12

        1.  The '726 and '441 Patents ..............................................................12

        2.  The '134 Patent ...............................................................................20

        3.  The '340 Patent ...............................................................................21

VI. CONCLUSION.....................................................................................................23

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                        **Page(s)**

*Affinity Labs of Tex., LLC v. Directv, LLC,*
    838 F.3d (Fed. Cir. 2016)................................................................................19

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014) ........................................................................ *passim*

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC,*
    966 F.3d 1347 (Fed. Cir. 2020) (Chen, J., concurring)...........................................16

*Ancora Techs. v. HTC Am., Inc.,*
    908 F.3d 1343 (Fed. Cir. 2018)........................................................................17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................3

*Aylus Networks, Inc. v. Apple Inc.,*
    856 F.3d 1353 (Fed. Cir. 2017)........................................................................5

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.,*
    687 F.3d 1266 (Fed. Cir. 2012)........................................................................3

*Bilski v. Kappos,*
    561 U.S. 593 (2010)................................................................................3, 4

*BSG Tech LLC v. Buyseasons, Inc.,*
    899 F.3d 1281 (Fed. Cir. 2018)......................................................................15

*Buck v. Hampton Twp. Sch. Dist.,*
    452 F.3d 256 (3d Cir. 2006)...........................................................................6

*Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.,*
    880 F.3d 1356 (Fed. Cir. 2018)..............................................................16, 21, 22

*Customedia Techs., LLC v. Dish Network Corp.,*
    951 F.3d 1359 (Fed. Cir. 2020)......................................................................15

*Cuvillier v. Sullivan,*
    503 F.3d 397 (5th Cir. 2007) .........................................................................3

*CyberSource Corp. v. Retail Decisions, Inc.,*
    654 F.3d 1366 (Fed. Cir. 2011)...............................................................4, 21, 22

*Data Engine Techs. LLC v. Google LLC,*
    906 F.3d 999 (Fed. Cir. 2018)................................................................16, 21, 22

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980)...................................................................................................4

*Diamond v. Diehr*,
   450 U.S. 175 (1981)...................................................................................................4

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)...............................................................17, 18, 19, 23

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
   955 F.3d 1317 (Fed. Cir. 2020).................................................................................18

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
   839 F.3d 1089 (Fed. Cir. 2016).................................................................................15

*Finjan, Inc. v. Blue Coat System, Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018).................................................................................15

*Fort Props., Inc. v. Am. Master Lease LLC*,
   671 F.3d 1317 (Fed. Cir. 2012)...................................................................................5

*Gibbs v. Coupe*,
   192 F. Supp. 3d 503 (D. Del. 2016)............................................................................3

*Graham v. John Deere Co. of Kansas City*,
   383 U.S. 1 (1966).......................................................................................................5

*In re Johnston*,
   435 F.3d 1381 (Fed. Cir. 2006).....................................................................10, 11, 22

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012)...........................................................................................4, 5

*Move, Inc. v. Real Est. All. Ltd.*,
   721 F. App'x 950 (Fed. Cir. 2018) ...........................................................16, 17, 21, 22

*Parker v. Flook*,
   437 U.S. 584 (1978)...............................................................................................4, 18

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
   855 F.3d 1322 (Fed. Cir. 2017).................................................................................16

*In re Rudy*,
   956 F.3d 1379 (Fed. Cir. 2020).................................................................................23

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018).................................................................................15

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017)......................................................................................18

*In re TLI Commc'ns LLC Patent Litigation*,
   823 F.3d 607 (Fed. Cir. 2016)......................................................................................19

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)....................................................................................16

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)..................................................3

**Statutes**

35 U.S.C. § 101................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..............................................................................................3, 12

## I.      NATURE AND STAGE OF PROCEEDINGS

On October 24, 2023, Plaintiffs, Ignite Enterprise Software Solutions, Inc. and IgniteTech CX Solutions, LLC (collectively, "Ignite") sued NGDATA US, Inc. ("Defendant"), alleging trade secret violation, tortious interference, and infringement of U.S. Pat. Nos. 10,496,726; 7,644,134; and 7,673,340. Defendant moved to dismiss for failure to state a claim. (D.I. 12) Rather than respond, Ignite filed an Amended Complaint (D.I. 17) to add allegations as well as a fourth asserted patent: U.S. 8,769,441 (collectively with the three previously-asserted patents, the "Asserted Patents") that is the parent of the '726 patent that Defendant moved to dismiss. None of the Asserted Patents have ever been litigated before.

## II.      SUMMARY OF ARGUMENT

This motion brings two grounds for dismissal of all Ignite's infringement claims.

First, the patent infringement claims should all be dismissed for failure to state a claim because Ignite still fails to plausibly allege that all limitations of any single patent claim are met.

Second, the patent infringement claims should all be dismissed for failure to state a claim because the Asserted Patents' claims are all invalid under 35 U.S.C. § 101.

## III.      STATEMENT OF FACTS

### A.      The Accused Lily System

The accused Lily$^{TM}$ system (hereinafter, "Lily") enables businesses to personalize their customer experiences at the individual level to deliver tailored marketing outreach. It does so by collecting and analyzing data on an individual customer basis to generate insights and recommendations for businesses to follow when interacting with each individual customer.

### B.      The '726 Patent

U.S. Pat. No. 10,496,726 generally relates to restructuring a website according to how users navigate it. (*See* D.I. 1 Ex. C.) Ignite alleges that Defendants infringe "at least claim 1"

(D.I. 17 ¶ 116), which is reproduced below in Section V(B)(1)(a). The purported invention seeks to "track and bundle the user interactions with the web site structure," analyze those aggregate interactions, then restructure the website accordingly. ('726 Pat. at 1:65-66.)

### C.    The '441 Patent

U.S. Pat. No. 8,769,441 issued on a parent application to the '726 Patent. It too generally relates to restructuring a website according to how users navigate it. (*See* D.I. 17 Ex. D.) Ignite alleges that Defendants infringe "at least claim 1" (D.I. 17 ¶ 167), which is reproduced below in Section V(B)(1)(a).

### D.    The '134 Patent

U.S. Pat. No. 7,644,134 generally relates to comparing user interaction with a system with an expected interaction, determining the differences, and recommending a change to the system. (*See* D.I. 17 Ex. E.) Ignite alleges that Defendants infringe "at least claim 1" (D.I. 17 ¶ 208), which is reproduced below in Section V(B)(2)(a). "Briefly described, the present [purported] invention is an innovative task analyzer of user interaction with a system. The present [purported] invention in its preferred form allows for the analysis of the performance of defined visitor tasks in a web site. Tasks can be defined as a sequence of web pages with which the host wishes or expects the visitor to view or interact." '134 Pat. at 2:19-24.

### E.    The '340 Patent

U.S. Pat. No. 7,673,340 generally relates to analyzing the structure of a system and recommending changes based on user interaction. (*See* D.I. 17 Ex. F.) Ignite alleges that Defendants infringe "at least claim 2" (D.I. 17 ¶ 251), which is reproduced below in Section V(B)(3)(a). Simply put, the claimed method requires (1) analyzing a system's structure by representing it as a presentation model state machine and creating a snapshot, (2) processing a log of user activity, and (3) creating a recommendation report.

## IV.    LEGAL STANDARDS

### A.    Fed. R. Civ. P. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding a Rule 12(b)(6) motion, "[t]he court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference." *Gibbs v. Coupe*, 192 F. Supp. 3d 503, 506 (D. Del. 2016).

Although factual allegations are taken as true, legal conclusions are given no deference— those matters are left for the court to decide. *See Ashcroft*, 556 U.S. at 678 (noting tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted).

### B.    35 U.S.C. § 101

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e

perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

The law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and *abstract ideas*." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978).

Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

## V.   ARGUMENT

### A.   The Amended Complaint Fails to Plausibly Allege Patent Infringement.

The Amended Complaint fails to state a claim because it does not allege facts that plausibly suggest Lily meets all limitations of any claim within any of the Asserted Patents.

#### 1.   The '726 Patent's "restructuring" limitation

The application for the '726 Patent was rejected by the Patent Office five times before an allowance. In response to one of those rejections, the applicant argued that a cited prior art reference did not teach determining "a second **structure**" because, according to the applicant, the reference simply "swaps out one banner (node) for another banner (node)." (Ex. A at 9.) The applicant's 2017 disclaimer indicates that a banner is not a "structure," and that simply replacing one website banner with another is therefore insufficient to "restructure" a website according to the '726 Patent's claims. *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017) ("Ultimately, the doctrine of prosecution disclaimer ensures that claims are not construed one way in order to obtain their allowance and in a different way against accused infringers.") (internal quotations omitted); *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 33 (1966) ("[C]laims that have been narrowed in order to obtain the issuance of a patent by distinguishing the prior art cannot be sustained to cover that which was previously by limitation eliminated from the patent.").

The claimed "restructuring" is a material limitation that the applicant relied on as an alleged point of novelty before the Patent Office. Indeed, this "restructuring" limitation was added to Claim 1 in order to gain allowance. (Ex. B at 5 (adding limitation "and (ii) **restructure** the web site according to the second **structure**" (emphases added)).) Yet the Amended Complaint pleads no facts to suggest that Lily engages in "restructuring the website," even after Defendant identified this deficiency in its first Motion to Dismiss. (D.I. 12 at 5.) Instead, Ignite's only support for this element is its bare allegation that "orchestrating the next recommended experience for users" (D.I. 17 ¶ 138) and "optimization" (*id.* ¶ 138) constitutes "restructuring" of a website. This is at odds with the plain meaning of the term "restructure" and with the specification's teaching that "the web site structure 505 would include data about the connectivity of its objects of interest and other parameters, such as, but not limited to the distance data, the links data, class data, identifiers, names, and aliases to objects of interest, children and parent relationships to certain pages, and network addresses." ('726 Pat. at 6:30-35.)

These allegations must fail because Lily is incapable of website redesign. Rather, Lily provides personalization recommendations that businesses can rely on and elect to implement. *See* https://www.youtube.com/watch?v=Iewq0IVEYeQ at 51:57-52:25 ("It's ultimately then the web personalization engine or the publication engine which will use this information . . . to make sure that you have the right content made available to the right user."). The Court may consider this information because Ignite relied on this same YouTube video to try to support its pleaded allegations. (*See* D.I. 17 ¶ 119 n.1; *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint and any matters incorporated by reference or integral to the claim, [etc.].").)

Further, the form of recommendations that Lily provides is that of the prior art: suggesting a different advertising banner, but not a change to the website "structure" itself. This can be seen in the Amended Complaint:



(D.I. 17 ¶ 126.) As shown above, Lily helps businesses determine which offers to show individual customers on existing portions of a website designed therefor, but not any changes in the "structure" thereof (*e.g.*, other locations on the website where on such offers should be displayed instead). The "structure" of the website, including those locations for receiving offer content, are fixed by the business users of Lily (question-marked rectangles in the above screenshot). Thus, Lily provides information to a business, enabling that business to "swap[] out one banner (node) for another banner (node)." (Ex. A at 9.) This "banner"-swapping technique is precisely what the applicant disclaimed as *not* satisfying a "structure," and is therefore incapable of meeting any "restructuring" or other related limitation. The Amended Complaint therefore continues to fail to plausibly allege infringement, and cannot be successfully amended yet again because Lily does not facilitate "restructuring" websites according to the '726 Patent's claims.

7

### 2.    The '441 Patent's "generating . . . a second structure for the single web site" limitation

The newly-added '441 Patent is a parent to the '726 Patent and contains substantially similar claims. As with claim 1 of the '726 Patent, claim 1 of the '441 Patent also requires restructuring a website. ('441 Pat., cl. 1 (". . . automatically generating, with a computer processor, a second structure for the single web site, the second structure defined by a second plurality of transitional links between the plurality of states of the single web site, the second plurality of transitional links including a new transitional link directly from the first state to the second state of the single web site.").) And as with the '726 Patent, Ignite does not plausibly allege that the Lily system engages in any website restructuring, especially when that restructuring requires defining a "plurality of transitional links" between a "plurality of states" of a website and a "new transitional link." Indeed, Ignite further fails to identify *any* "transitional links" or "states" purportedly found in the Lily system. (*See* D.I. 17 ¶¶ 170-190.)

Ignite's allegations as to this restructuring limitation for the '441 Patent are supported only by references to how the Lily system assists with personalizing and optimizing marketing campaigns for users. (*See, e.g.*, *id.* ¶ 187 ("it orchestrates personalized marketing campaigns"); *id.* ¶ 188 ("great personalization of [a] website for a given user").) But providing input on what types of advertisements a user may be receptive to is *not* the same thing as restructuring the transitional links and states of a website. There are no facts pleaded that would suggest the Lily system performs this restructuring step, and, as explained above with respect to the '726 Patent, the Lily system in fact does not operate in that fashion. For these reasons as well as those discussed regarding the '726 Patent (*e.g.*, prosecution disclaimer), the Amended Complaint also fails to plausibly allege infringement of the '441 Patent.

### 3.      The '134 Patent's "predefined first sequence of user accesses to two or more of the plurality of states" limitation

The '134 Patent's claimed method employs the concept of a "sequence of user accesses to two or more of the plurality of states." ('134 Pat. at 1:18-20 ("The invention can be applied to user interactions with systems that can be characterized and recorded as a sequence of steps.").) In the context of the preferred embodiment, this is a sequence of web pages that a user visits. (*Id.* at 1:28-30 ("These tasks generally comprise visitor interactions with a particular sequence of web pages via a user-interface such as in a web browser application.").)

The Amended Complaint also continues to fail to plead facts to suggest the Lily system performs any such pre-definition of a sequence of states. In fact, all the Amended Complaint alleges for this limitation is as follows:

> As to the first limitation of claim 1 of the '134 patent, the Lily System, "defin[es] a first task as including a predefined first sequence of user accesses to two or more of the plurality of states." As shown in the screenshot of the Lily System End-User Interface below, the Lily System includes such pre-defined tasks, which the interface labels as "goals" and "subgoals." Specifically, in this example, the Lily System has predefined tasks labeled "request specific account info," and "account balance management" and additional tasks labeled "check current balances" and "receive money."



(D.I. 17 ¶ 215.) There is no plausible allegation that these goals amount to a "sequence of user accesses to two or more of the plurality of states." The Amended Complaint relies on the above image, but as shown, these are *discrete* interactions, not pre-defined *sequences* of accessing "two or more of the plurality of states [e.g., web pages]." Missing from Ignite's allegations is any suggestion Lily pre-defines and considers the claimed "sequences" of user access between multiple web pages. Because the Amended Complaint does not allege any facts to show Lily uses pre-defined *sequences* of user access, it also fails to state a claim for this relief.

### 4. The '340 Patent's "presentation model" and "snapshot" limitations

The Amended Complaint also fails to plead facts to plausibly allege that the Lily system satisfies at least two limitations of the '340 Patent's claims:

1. representing the interactive system as at least one **state machines**, wherein a first state machine is a **presentation model** and an **optional** second state machine is an application model; and

2. creating at least one state machine **snapshot** for the presentation model and, **if necessary**, the application model;

The "second state machine" that is an "application model" is claimed only as an "optional" and "if necessary" limitation. Accordingly, this claimed limitation is properly disregarded for this analysis. *See In re Johnston*, 435 F.3d 1381, 1384 (Fed. Cir. 2006) ("As a matter of linguistic precision, **optional** elements do not narrow the claim because they can always be omitted." (emphasis added)).

As to the first missing limitation, the specification discloses that "state machines" are representations of "nodes and transitions." '340 Pat. at 3:53. The "presentation model" is a representation of the user interface. *Id.* at 11:37-41 ("Typically, the system modeling unit 312 refers to the user interface 139 of the subject system 133 as the presentation model . . . ."). For example, "[a] presentation model state machine for [an] e-toys web application can be created

10

with a state for each page displayed in a web browser. State transitions correspond to the hyper-links between pages that the user can follow." *Id.* at 11:53-57

The claimed method therefore requires creating a "presentation model" that abstracts the user interface elements such as pages displayed and links between pages. The Amended Complaint alleges no facts to suggest Lily performs any such modeling, but instead relies on cryptic annotations (yellow and red) added to a vague flow chart.



(D.I. 17 ¶ 260.) Ignite contends these "< / >" symbols prove that the Lily system uses a "state machine." (*Id.*) Nowhere in the Amended Complaint is there any explanation of what these symbols mean or how they signify the representation of a user interface, pages, and links between those pages. Thus, there is no showing that Lily has any knowledge of the structure of the user interface (*e.g.*, page layouts, links between pages) as required to create the claimed "presentation model," nor does the Amended Complaint even point to anything that is a "model" of any type.

As to the second missing limitation, the Amended Complaint also still fails to plead that Lily creates the claimed "state machine snapshot," which is described as a model that "corresponds to how a particular state machine exists at a **given time**." '340 Pat. at 12:47-48 (emphasis added). "A state machine snapshot 412 records the specific states that are part of the

11

associated state machine 403 for a **particular range of time**." *Id.* at 20:36-38 (emphasis added). "A state machine snapshot 412 has a **model graph** 421 to physically represent the nodes and state transitions between them." *Id.* at 20:40-42. Although user interactions are timestamped, these are not snapshots of a "state machine," which is a representation of a website's structure ("nodes and transitions"). Rather a "snapshot" must record how the website is structured at a given time. Ignite still pleads no facts to support any allegation that Lily creates or preserves models of website structure tied to specific time periods, and so the Amended Complaint also continues to fail to plead infringement of this element.

### B.    The Asserted Patents are Invalid under 35 U.S.C. § 101.

Ignite's patent infringement claims should also be dismissed because the claims of the Asserted Patents are drawn to ineligible subject matter under 35 U.S.C. § 101. As shown herein, each of the representative claims is directed an abstract idea, and none of them contains an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to **significantly more** than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Because Ignite has failed to, and cannot plausibly, state a claim upon which relief may be granted as to any of the Asserted Patents' claims, NGDATA US, Inc. respectfully requests that the Court grant its motion and dismiss all patent claims in this case with prejudice. Fed. R. Civ. P. 12(b)(6).

#### 1.    The '726 and '441 Patents

##### (a)    *Alice* Step 1

Ignite admits that "Claim 1 of the '726 patent is exemplary of the novel and innovative contribution made by all claims of the '726 patent." (D.I. 17 ¶ 54.) The Court may thus treat it as representative for the Section 101 analysis. Claim 1, and thus all claims of the '726 Patent, are directed to the abstract idea of rearranging a store based on customer navigation.

| '726 Patent Claim Language | Claimed Idea |
|---|---|
| 1. A method for managing a network accessible web site, the method comprising: | A method for managing a store, the method comprising: |
| receiving, by a computer, an indication of a first structure associated with the web site, the first structure comprising a first plurality of nodes, each node representing a web resource of the web site accessible via the web site, and a first plurality of edges, each edge representing a link between web resources; | receiving, by a manager, a first floorplan comprising multiple aisles and multiple signs, each sign directing a customer from one aisle to another aisle; |
| receiving, by the computer, historical session data representing previous user activity on the web site, the historical session data including user navigation from among three or more nodes of the first plurality of nodes of the web site; | receiving, by the manager, information on customer navigation between three or more aisles of the web site (*e.g.*, sales data for products in those aisles, or data from foot traffic sensors in those aisles); |
| determining, by the computer, based on the historical session data, a statistical correlation associated with user navigation to a first node and to a second node of the first plurality of nodes; and | determining, by the manager, based on the customer navigation information, a statistical correlation associated with customer navigation to a first aisle and to a second aisle of the first floorplan; and |
| responsive to determining the statistical correlation exceeds a predetermined threshold, automatically (i) determining, by the computer, a second structure associated with the web site, wherein the second structure comprises a second plurality of nodes and a second plurality of edges including a new first edge between the first node and the second node and | automatically (i) determining, by the manager, a second floorplan comprising rearranged aisles and altered signs, including a new sign between the first aisle and second aisle (*e.g.*, with info about the contents thereof); |
| (ii) restructuring the web site according to the second structure. | (ii) restructuring the store according to the second floorplan. |

Ignite also admits that "Claim 1 of the '441 patent is exemplary of the novel and innovative contribution made by all claims of the '441 patent." (D.I. 17 ¶ 58.) All claims of the

'441 Patent may thus be analyzed together. As shown in below table, the '441 Patent's claims are not materially different from those of its child (the '726 Patent) for the purpose of the Section 101 analysis.

| '441 Patent Claim Language | Claimed Idea |
|---|---|
| 1. A method for managing an interactive electronic system comprising a single web site, the method comprising: | A method for managing a store, the method comprising: |
| accessing a representation of a first structure of the single web site, the single web site associated with a plurality of states representing web pages within the single web site, including a first state and a second state, the first structure being defined by a first plurality of transitional links between the plurality of states of the single web site, the first plurality of transitional links absent a transitional link directly from the first state to the second state; | receiving, by a manager, a first floorplan comprising multiple aisles and multiple signs, each sign directing a customer from one aisle to another aisle; |
| based on session data representing actual user navigation from among three or more of the plurality of states of the single web site, including the first state and the second state, determining that a statistical correlation associated with user navigation to the first state and to the second state exceeds a predetermined threshold; and | determining, by the manager, based on the customer navigation information, a statistical correlation associated with customer navigation to a first aisle and to a second aisle of the first floorplan; and |
| responsive to determining that the statistical correlation exceeds the predetermined threshold, automatically generating, with a computer processor, a second structure for the single web site, the second structure defined by a second plurality of transitional links between the plurality of states of the single web site, the second plurality of transitional links including a new transitional link directly from the first state to the second state of the single web site. | determining, by the manager, a second floorplan comprising rearranged aisles and altered signs, including a new sign between the first aisle and second aisle (*e.g.*, with info about the contents thereof); |

Here, the '726 and '441 Patents' claims are not directed to any specific means or method for improving technology—they are directed to the abstract idea of rearranging a store (in this case, a digital store—a website of the type common for the last quarter century) based on

customer navigation. Much like the long-standing practice of rearranging a store's aisles and signage to increase sales or highlight higher-margin or locally-popular items based on how customers tend to navigate a particular store, this is an abstract idea ineligible for patenting. That it is performed on a computer is insufficient to render the claims non-abstract. *See, e.g.*, *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) ("[I]mproving a user's experience while using a computer application is not, without more, sufficient to render the claims directed to an improvement in computer functionality."); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094 (Fed. Cir. 2016) (holding claims directed to an abstract idea because, among other things, they "merely implement[ed] an old practice in a new environment").

The abstract idea inquiry begins by analyzing the "focus" of the claim, *i.e.*, its "character as a whole," in order to determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). For example, the Federal Circuit has explained that courts should examine the patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). "In cases involving software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.'" *Id.* (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016)); *see BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285-86 (Fed. Cir. 2018).

The functional nature of these claims' limitations supports their abstractness. In determining whether a particular claim is directed to an abstract idea, courts have focused on whether the claim is purely functional in nature rather than containing the specificity necessary

15

to recite how the claimed function is achieved. As Judge Chen of the Federal Circuit commented, "while not all functional claiming is the same, simply reciting a functional result at the point of novelty poses serious risks under section 101." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 966 F.3d 1347, 1356 (Fed. Cir. 2020) (Chen, J., concurring) (citations omitted).

For example, in *Move, Inc.*, the Federal Circuit held that even when the claim limitations provide steps for using the computer to perform a step in the claim, "they contain no technical details or explanation of how to implement the claimed abstract idea using the computer." *Move, Inc. v. Real Est. All. Ltd.*, 721 F. App'x 950, 955 (Fed. Cir. 2018). In the past, the Federal Circuit has directed courts to "look to whether the claims focus on a specific **means** or **method**, or are instead directed to a **result** or **effect** that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (emphases added). Therefore, the question in such cases is "whether the claims are directed to 'a specific means or method' for improving technology or whether they are simply directed to an abstract end-result." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017).

The '726 and '441 Patents' claims directed to an abstract end-result. They lack any of the specificity that the Federal Circuit has held is sufficient to confer patent eligibility. *Cf. Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) (holding eligible claims with the required specificity, but ineligible those without it); *Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.,* 880 F.3d 1356, 1361–63 (Fed. Cir. 2018) (holding claims eligible where they were "directed to a **specific** improvement in the capabilities of computing devices") (emphasis added); *see also RecogniCorp*, 855 F.3d at 1326 (claims were ineligible because they were not directed to "a **specific** means or method for improving technology") (emphasis added).

16

Claim 1 of the '726 and Claim 1 of the '441 Patent do not require a new or unconventional machine or process for manipulating this data; it claims only "receiving" structure data, "receiving" customer usage data, "determining" a correlation, "determining" a second structure, and "restructuring" the web site accordingly. "Inquiry therefore must turn to any requirements for *how* the desired result is achieved." *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1355 (Fed. Cir. 2016). But Claim 1 does not describe **how** any steps of the desired **result** is achieved. There is no limitation on **how** to determine a statistical correlation or how to generate a second structure, is achieved. Similar to the claim found to be invalid in *Electric Power Group*, Claim 1 also involves the same general steps of "collecting, organizing, and presenting information." *See Elec. Power Grp.*, 830 F.3d at 1351–53; *Move Inc.*, 721 Fed. Appx. at 954. In other words, the mechanism to implement the claimed idea is impermissibly unbounded in scope.

Claim 1 of the '726 and Claim 1 of the '441 Patent also differ from claims that the Federal Circuit has held to be eligible because those patentable claims included limitations claiming specific means for improving specific computer technology or solving specific computer problems. For example, the Federal Circuit addressed the eligibility of claims directed to improving computer security in *Ancora Techs. v. HTC Am., Inc.*, 908 F.3d 1343 (Fed. Cir. 2018). In that case, the Federal Circuit held the claims eligible and stated, "Improving security— here, against a computer's unauthorized use of a program—can be a ***non-abstract*** computer-functionality improvement . . . done by a ***specific technique*** that departs from earlier approaches to solve a ***specific computer problem***." *Id.* at 1348 (emphasis added). The court was persuaded because "[t]he claimed method here specifically identifies how that functionality improvement is effectuated in an assertedly unexpected way." *Id.* The same is not true of the '726 and '441

17

Patents' claims. They do not require any specific or unconventional technique, and they do not identify any specific improvement to computer functionality, much less an unexpected way of effectuating such an improvement.

That the claims are limited to a particular technological environment (websites) does not alter this analysis. "Most obviously, limiting the claims to [a] particular technological environment . . . is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." *Elec. Power Grp.*, 830 F.3d at 1354. As the Supreme Court explained in *Alice, Parker v. Flook,* 437 U.S. 584 (1978) stands for the proposition that the prohibition on patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment. *Alice,* 134 S. Ct. at 2358. The claims are directed to an abstract idea even if their limitations require practicing that idea on a website.

Further, while the '726 and '441 Patents' claims may use technical jargon, that does not mean they teach technical solutions. *See Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1326 (Fed. Cir. 2020) ("Although written in technical jargon, a close analysis of the claims reveals that they require nothing more than this abstract idea."). And even if the claims were directed to a useful idea, that is no salve because claims are still invalid for lack of subject-matter eligibility when they teaches a useful abstract idea. *See Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 910 (Fed. Cir. 2017) ("The fact that an [idea] can be used to make a process more efficient, however, does not necessarily render an abstract idea less abstract.").

### (b) *Alice* Step 2

The '726 and '441 Patents' claims are implemented on generic computer technology and therefore do not contain an inventive concept sufficient to confer eligibility. There is simply nothing "inventive" about using a generic computer to manipulate information. As explained

above, the abstract functional descriptions in the claims are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 615 (Fed. Cir. 2016) (claims failed *Alice*'s step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Similar to the invalidated claims in *Intellectual Ventures I LLC v. Symantec Corp.*, nothing in the '726 and '441 Patents' claims "contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." 838 F.3d 1307, 1316 (Fed. Cir. 2016) (citing omitted).

Courts have repeatedly held that the presence of generic hardware and routines like those in Claim 1 of the '726 Patent and Claim 1 of the '441 Patent does not make an otherwise abstract idea patent-eligible. *See, e.g., Affinity Labs of Tex., LLC v. Directv, LLC*, 838 F.3d at 1263 (Fed. Cir. 2016) (finding that claims are ineligible under *Alice* Step two where the allegedly inventive concept was "not the essential advance," was only described functionally, and where there was "no further specification of a particular technology for accomplishing the allegedly inventive concept.") The claims only require using a generic "computer" to perform data input, analysis, and output. They fail to disclose how any of those operations are performed, or how, if at all, they advanced the underlying technology. In other words, "nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer . . . technology." *Elec. Power Grp.*, 830 F.3d at 1355. There is thus no limitation that could be considered an inventive concept under step two of the *Alice* test. All claims of the '726 and '441 Patents are therefore invalid under Section 101.

2.      **The '134 Patent**

(a)      *Alice* **Step 1**

Ignite admits that "Claim 1 of the '134 patent is exemplary of the novel and innovative contribution made by all claims of the '134 patent." (D.I. 17 ¶ 63.) The Court may thus treat it as representative for the Section 101 analysis. Claim 1, and thus all claims of the '134 Patent, are directed to the abstract idea of rearranging a store based on customer navigation, just like the '726 Patent's claims.

| '134 Patent Claim Language | Claimed Idea |
|---|---|
| 1. A computer implemented method for analyzing user interaction with a system, wherein the system comprises a plurality of states linked by a navigation structure and a user interface for navigating between the states, the method comprising: | A method for analyzing customer interaction with a store, wherein the store comprises multiple aisles linked by a pedestrian pathway, the method comprising: |
| defining a first task as including a predefined first sequence of user accesses to two or more of the plurality of states; | defining a predefined expected customer routing through two or more aisles; |
| accessing user session data representative of a session of first user's interaction with the system, the session including a second sequence of user accesses to two or more of the plurality of states; | accessing customer tracking data showing a customer's actual routing through the store (*e.g.*, data from foot traffic sensors in those aisles); |
| configuring a computer processor to execute a pattern-matching algorithm to compare the second sequence of user accesses in the user session data to the first sequence of user accesses in the first task to determine whether at least a portion of the first task was performed by the first user; | executing a pattern-matching algorithm to compare the actual routing to the expected routing; |
| determining differences between the user session data and the first task if at least a portion of the first task was performed by the first user; and | determining the differences between the actual routing and the expected routing; and |
| generating a recommendation for altering one or more of the plurality of states of the system, based on the determined differences between the user session data and | generating a recommendation for rearranging one or more of the aisles based on the differences between the actual routing and |

| '134 Patent Claim Language | Claimed Idea |
|---|---|
| the first task, to assist future users in performing the first task. | the expected routing, to assist future customers in navigating the store. |

The arguments and authority presented with respect to the '726 Patent apply with equal force here, and would be redundant to repeat. Briefly, the '134 Patent's claims are functionally defined without any specificity as to how to achieve the desired result. *See Move, Inc.*, 721 Fed. Appx at 955; *Data Engine*, 906 F.3d 999; *Core Wireless,* 880 F.3d 1356, 1361-63. The claims require only "a computer" and "a computer processor" to perform information input and manipulation, which are abstract steps that can be accomplished with pen and paper. *See CyberSource*, 654 F.3d at 1372. Claim 1 does not even attempt to limit itself to a website field of use, but instead broadens its applicability to "a system." These qualities confirm it is directed to an abstract idea.

### (b)     *Alice* Step 2

The '134 Patent's claims require only generic hardware to process information. There is nothing inventive about such an arrangement, and so the claims also fail *Alice* Step 2 for the same reasons as discussed with respect to the '726 Patent. All claims of the '134 Patent are therefore invalid under Section 101.

### 3.     The '340 Patent

### (a)     *Alice* Step 1

Ignite admits that "Claim 1 of the '340 patent is exemplary of the novel and innovative contribution made by all claims of the '340 patent." (D.I. 17 ¶ 68.) The Court may thus treat it as representative for the Section 101 analysis. Claim 1, and thus all claims of the '340 Patent, are directed to the abstract idea of analyzing customers' navigation of a store.

| '340 Patent Claim Language | Claimed Idea |
|---|---|
| 2. A method for analyzing user behavior of an interactive system, the method comprising: | A method for analyzing customer navigation of a store, the method comprising: |
| analyzing a structure of the interactive system, the analyzing comprising: | analyzing a floorplan of the store, the analyzing comprising: |
| representing the interactive system as at least one state machines, wherein a first state machine is a presentation model ~~and an optional second state machine is an application model[1]~~; and | representing the store as floorplan, wherein the floorplan depicts aisles and signs; |
| creating at least one state machine snapshot for the presentation model ~~and, if necessary, the application model~~; | dating the floorplan to indicate what time period it represents; |
| processing log data representing user activity of the interactive system; and | processing logged data representing customer navigation of the store (*e.g.*, from foot traffic sensors within the store's aisles); |
| creating a report on user activity of the interactive system, wherein the report includes recommendations to improve the interactive system based on the user activity. | creating a report to recommend improvements to the store floorplan based on the customer activity. |

The arguments and authority presented with respect to the '726 Patent apply with equal force here, and would be redundant to repeat. Briefly, the '340 Patent's claims are functionally defined without any specificity as to how to achieve the desired result. *See Move, Inc.*, 721 Fed. Appx at 955; *Data Engine*, 906 F.3d 999; *Core Wireless,* 880 F.3d 1356, 1361-63. The claims recite abstract steps that can be accomplished with pen and paper. *See CyberSource*, 654 F.3d at 1372. Claim 1 is not limited to websites or require the use of even generic computer hardware. All that is claimed is the idea of analyzing customers' navigation of a store, which is abstract

---

[1] As noted previously, such "optional" and "if necessary" claim limitations can be ignored for purposes of analyzing the claims. *See In re Johnston*, 435 F.3d at 1384.

data collection and analysis. *See, e.g.*, *In re Rudy*, 956 F.3d 1379, 1384 (Fed. Cir. 2020) ("We have held in the computer context that 'collecting information' and 'analyzing' that information are within the realm of abstract ideas."); *Elec. Power Grp.*, 830 F.3d at 1353 ("[W]e have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas.").

#### (b)    *Alice* Step 2

The '340 Patent's claims do not specify any hardware, but recite only information processing. The claims are thus wholly-abstract, and cannot supply an inventive concept for the same reasons as discussed with respect to the '726 Patent. All claims of the '340 Patent are therefore invalid under Section 101.

## VI.    CONCLUSION

The Amended Complaint's allegations of patent infringement should be dismissed because they fail to plausibly allege that all claim limitations are met. In addition, the Amended Complaint's allegations of patent infringement should separately be dismissed for failure to state a claim because the Asserted Patents' claims are all invalid under 35 U.S.C. § 101. Ignite had the opportunity to consider the similar arguments made within Defendant's prior motion to dismiss (D.I. 11) and made its best effort to amend and bolster its pleading accordingly. Because Ignite has twice failed to plead any cognizable patent infringement claims, further amendment would be futile. The Amended Complaint's patent infringement claims should all therefore be dismissed with prejudice.

Dated: March 5, 2024          Respectfully submitted,

FISH & RICHARDSON P.C.

By:    */s/ Warren K. Mabey, Jr.*
       Warren K. Mabey, Jr. (#5775)
       222 Delaware Avenue, 17th Floor
       Wilmington, Delaware 19801
       (302) 652-5070 (Telephone)
       mabey@fr.com

       Bret T. Winterle
       Carl E. Bruce
       Michael A. Vincent
       1717 Main Street, Suite 5000
       Dallas, Texas 75201
       (214) 747-5070 (Telephone)
       winterle@fr.coM
       bruce@fr.com
       vincent@fr.com

       ***ATTORNEYS FOR DEFENDANT***
       ***NGDATA US, INC.***

24