IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IGNITE ENTERPRISE SOFTWARE
SOLUTIONS, LLC and IGNITETECH
CX SOLUTIONS, LLC

    Plaintiffs,

v.

NGDATA, US INC. and NGDATA N.V.

    Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§

C.A. No. 23-cv-01209-JFM

JURY TRIAL DEMANDED

REDACTED VERSION

**PLAINTIFF'S RESPONSE TO NGDATA'S MOTION FOR
REARGUMENT REGARDING THE COURT'S ORDER GRANTING
PLANTIFFS' MOTION TO COMPEL (D.I. 148), OR ALTERNATIVELY, NGDATA'S
MOTION FOR A PROTECTIVE ORDER**

Of Counsel:

Conor M. Civins
Michael Chibib
BRACEWELL LLP
111 Congress Ave. Suite 2300
Austin, Texas 78701
(512) 472-7800
conor.civins@bracewell.com
michael.chibib@bracewell.com

Dated: January 17, 2025

Travis S. Hunter (#5350)
Katharine L. Mowery (#5629)
Gabriela Z. Monasterio (#7240)
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
hunter@rlf.com;
mowery@rlf.com
monasterio@rlf.com

*Attorneys for Plaintiffs Ignite Enterprise
Software Solutions, LLC and IgniteTech CX
Solutions, LLC*

**TABLE OF CONTENTS**

I.    INTRODUCTION ...........................................................................................................1

II.    ARGUMENT ................................................................................................................2

    A.    Agreements with current customers and other documents identifying
         current customers are critical to Plaintiff's case. ....................................................2

         1.    NGData's current customers are relevant to indirect infringement. ............3

         2.    NGData's current customer agreements are relevant to reasonable
             royalty and lost profits analysis. .................................................................5

         3.    NGData's current customers are relevant to the competitive
             landscape between the Parties. .....................................................................6

    B.    NGData's alleged concern over the "irreparable prejudice" of disclosure is
         theatrical and nonsensical. .......................................................................................7

    C.    This is yet another attempt by NGData to avoid producing highly relevant
         information...............................................................................................................8

III.    CONCLUSION............................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen Archery, Inc. v. Browning Mfg. Co.*,
    *898 F.2d 787* (Fed. Cir. 1990) ...................................................................................6

*ERBE Elektromedizin GmbH v. Int'l Trade Comm'n*,
    566 F.3d 1028 (Fed. Cir. 2009)...............................................................................3

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970)........................................................................5

*Polaris Innovations, Ltd. V. Kingston Tech. Co.*,
    2017 U.S. Dist. LEXIS 222261 (C.D. Cal. 2017)....................................................3

*Schick v. Cintas Corp.*,
    No. CV 17-7441 (JMV), 2020 WL 1873004 (D.N.J. Apr. 15, 2020)........................2

**Rules**

Federal Rule 33(d) .............................................................................................................10

**Other Authorities**

NGData, "Effective Customer Acquisition in the Digital Era" (2016),
    https://ngdata.com/wp-content/uploads/2016/09/Effective-Customer-
    Acquisition-in-the-Digital-Era-Report-2016.pdf;........................................................5

## I.    INTRODUCTION

Defendants NGData, US Inc. and NGData N.V.'s (collectively "Defendants" or "NGData") Motion for Reargument or Protective Order ("Motion for Reargument") (D.I. 153) is inaccurate and is a theatrical attempt to continue to delay producing information that is not only highly relevant to this case, but critical to Plaintiffs Ignite Enterprise Software Solutions, LLC and IgniteTech CX Solutions, LLC's (together, "Plaintiff" or "Ignite") claims for patent infringement, tortious interference, and trade secret theft. The notion that the identity of NGData's current customers and/or agreements with those customers relating to the sale of the accused products are not critical to this case is untenable. As described in more detail below, the identity of NGData's current customers and/or agreements with those customers are not only relevant, but are necessary to prove Plaintiff's indirect infringement claims, conduct damages analysis under both a reasonable royalty and lost profits approach, and to determine the competitive landscape (and potential lost customers) associated with Plaintiff's tortious interference and trade secret theft claims.

Since the inception of this case, NGData has refused to produce even the most basic discoverable information, reluctantly trickling out bits and pieces of the most non-controversial and relevant information only after being compelled to do so by Plaintiff and this Court. Indeed, NGData and its CEO (Doug Gross) make multiple representations in NGData's Motion for Reargument that make it abundantly clear NGData is *still* withholding critical relevant information despite requests served several months ago, several meet and confers, multiple motions to compel, and a Court Order to produce this information (D.I. 148).

As laid out below, NGData should be ordered to immediately produce the agreements (and related documents) it has with its current customers related to the accused products, as well as the

information NGData describes it has in its possession relating to the customers' use, implementation, and configuration of the accused products.

## II.    ARGUMENT

### A.    Agreements with current customers and other documents identifying current customers are critical to Plaintiff's case.

The identity of NGData's current customers and/or agreements with those customers are critical to proving several aspects of Plaintiff's case against NGData, including indirect infringement, damages under both a reasonable royalty and lost profits approach, and to show the competitive landscape (and potential lost customers) between the Parties associated with Plaintiff's tortious interference and trade secret claims.

NGData's argument that the relevance of NGData's current customer identities and agreements with those customers is outweighed by prejudice to NGData is unpersuasive and entirely contrary to patent and trade secret jurisprudence. In support of its argument, NGData cites a single inapposite case from a New Jersey District Court in 2020—*Schick v. Cintas Corp.*, No. CV 17-7441 (JMV), 2020 WL 1873004 (D.N.J. Apr. 15, 2020)—in which the Court found that defendant Cintas Corporation (a textile cleaning company) need only provide the identity of its ten largest former customers so that the plaintiff could seek information directly from those customers. *Id.* at 3. Of course, NGData failed to provide any meaningful context for its lone, cited case.

*Schick* was not a patent infringement, trade secret, or tortious interference case. Rather, *Schick* was a nuisance case that involved an individual plaintiff who owned a home next to the textile cleaning company Cintas Corporation and claimed that solvent odors emanating from the Cintas facility were causing him health problems. *Id.* at 1. As part of the discovery process, the plaintiff was trying to determine what specific chemicals were emanating from the textiles Cintas was cleaning. Cintas claimed not to know what the chemicals were and so the plaintiff sought a

list of the customers so he could discover that information. Importantly, in determining Cintas only needed to provide its ten largest former customers rather than the full list of customers, the Court reasoned that what was relevant was simply identifying the chemicals or fumes that were at issue. *Id.* at 2. This did not require an identification of Cintas's lengthy list of customers or any agreements with those customers, rather it simply required a representative sample such that the plaintiff could discover the chemicals those customers used. *Id.*

Thus, the *Schick* case is neither persuasive nor applicable here. In this case, Plaintiff needs the identity of and agreements with current customers so it can prove its indirect infringement case, conduct its reasonable royalty and lost profits analysis, and establish the competitive landscape between the Parties as described in more detail below.

### 1.    *NGData's current customers are relevant to indirect infringement.*

Ignite needs discovery into the overall system and system configurations used by NGData's customers. Ignite has alleged indirect infringement since the filing of this case. Compl., Dkt. 1, at ¶¶ 91-94, 113-16, 131-34 (pleading induced infringement). Indirect infringement (whether induced infringement or contributory infringement) requires evidence of direct infringement—such as direct infringement by a customer. *ERBE Elektromedizin GmbH v. Int'l Trade Comm'n*, 566 F.3d 1028, 1030 (Fed. Cir. 2009). Ignite maintained its allegations of indirect infringement in its Infringement Contentions. *E.g.*, Infringement Contentions, at 4-5. Ignite's Infringement Contentions cite to specific NGData customers with directly infringing systems. *E.g.*, Infringement Contentions Ex. A, at 26, 35, 37, 111, 120, 132 (citing YouTube video about system with "Individual Coupon delivery" based on prior user actions and current location). Identification of customers is relevant for induced infringement. *Polaris Innovations, Ltd. V. Kingston Tech. Co.*, 2017 U.S. Dist. LEXIS 222261, at *27, 31 (C.D. Cal. 2017). The documents cited in the Infringement Contentions indicate that NGData is highly involved in the development of the

overall infringing systems of NGData's customers. But even after the deadline for production of documents on former customers, NGData has still not provided documents sufficient to explain the extent of NGData's involvement or what steps or parts of the system come from NGData as opposed to NGData's customers.

In NGData's Motion for Reargument, NGData claims to have information about the ███████████████████████████████████████████████████████████████████

The Parties met and conferred as ordered by the Court in D.I. 156, during which Plaintiff asked NGData to produce whatever documentation or reports ███████████████████████████ ███████████████████████████ NGData refused to agree to produce such information, taking the position it preferred to answer interrogatories instead. Ultimately, NGData did provide responses to interrogatories on January 16, 2025, which included a scrubbed down narrative response and identifying a single document under Federal Rule of Civil Procedure 33(d). However, neither the document identified, nor the interrogatory responses provide the required information about the end-to-end system for Plaintiff to prove indirect infringement. Instead, NGData merely provided a high-level description of a small section around the accused Lily system but failed to provide the information needed for the end-to-end system.

Based on Plaintiff's inspection of the source code earlier this week, Plaintiff needs to obtain this directly from NGData customers. Plaintiff expects the relevant data to be available in configuration files or other data held by NGData's individual customers or included as part of their overall systems. For example, the setting of particular alerts and recommended actions appears to be part of specific customer configurations and are implemented on the customer side. Some such configurations and settings would result in an infringing system, while others may not. NGData's Lily system appears to be designed to operate as middleware between other customer systems to

enable infringing behavior. For example, the Lily system interfaces with "marketing execution systems" to provide "appropriate actions" to take with customers. NGData, "Effective Customer Acquisition in the Digital Era" (2016), https://ngdata.com/wp-content/uploads/2016/09/Effective-Customer-Acquisition-in-the-Digital-Era-Report-2016.pdf; *see also* SC_000035.

Thus, to demonstrate the directly infringing activity (i.e., the customer's use), Plaintiff needs to discover directly from current NGData customers how they are using the accused system to take the "appropriate actions."

> **2.      *NGData's current customer agreements are relevant to reasonable royalty and lost profits analysis.***

NGData's customer identities and agreements are also critical to Plaintiff's damages analysis.  At least factors six, eleven and thirteen of the *Georgia-Pacific* factors specifically focus on the infringer's use, value, and profit associated with using ***or selling*** the infringing products.

- **Factor 6**- *the effect of selling the patented specialty in promoting sales of other products of the licensee*; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales;

- **Factor 11**- the *extent to which the infringer has made use of the invention and the value of such use*;

- **Factor 13**- the *portion of realizable profit attributable to the invention as distinguished from non-patented elements*, significant features/improvements added by the infringer, the manufacturing process or business risks in determining a reasonable royalty.

*See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

The agreements between NGData and its current customers are not only relevant to the factors above, but are the best evidence of how much the accused products are being purchased for, what features and functionality are being purchased and how they are valued, the extent of such use, the effect (if any) of promoting sales of other products of NGData, and the realizable profit attributable to the patented invention as distinguished from non-patented elements. See e.g.

*Allen Archery, Inc. v. Browning Mfg. Co., 898 F.2d 787, 790* (Fed. Cir. 1990) ("holding the proper basis for determining a reasonable royalty was the prices at which the defendant itself sold the infringing bows to its customers, which obviously were established in arm's-length transactions.").

Defendant's agreements are also highly relevant for the lost profits analysis, as they are critical in assessing the value of the patented features in the marketplace and may be used to determine sales that Plaintiff would have made absent infringing activity. Customer identities are essential to the lost profits analysis. In *Versata Software, Inc. v. SAP Am., Inc.*, the court upheld a lost profits award where Plaintiff's expert analyzed a pool of defendant's customers that plaintiff may have won but for defendant's infringement as one step in calculating lost profits. 717 F.3d 1255, 1266-67 (Fed. Cir. 2013).

Accordingly, NGData's current customer agreements and identities are critical in conducting reasonable royalty and lost profits analyses.

### 3. NGData's current customers are relevant to the competitive landscape between the Parties.

NGData has repeatedly argued that Plaintiff and NGData are not competitors. Additionally, NGData argues in its Motion for Reargument that it had been communicating with and attempting to win its ███████████████████████████████████████████████ ███████████████████████████████ (*See* Motion for Reargument at 3). First, Plaintiff should be entitled to discover whether any of NGData's current customers are customers Plaintiff was trying to win business from during the relevant same time period. Second, Plaintiff should be able to discover the veracity of NGData's claim that it was, in fact, in communication with its current customers prior to January 2022, when NGData misappropriated Plaintiff's trade secrets. Third, Plaintiff should be able to discover whether NGData used any of Plaintiff's confidential information or trade secrets to win the business of NGData's current customers after January 2022.

Finally, the identity of NGData's current customers is also relevant to NGData's fundamental argument that the Parties are not competitors.

      **B.    NGData's alleged concern over the "irreparable prejudice" of disclosure is theatrical and nonsensical.**

NGData argues, via a self-serving and conclusory affidavit from its CEO, that its relationships ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ (Motion for Reargument at 3). In support of this argument, NGData's CEO goes on to explain that ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ (Motion for Reargument at 5-7). Yet NGData also insists that despite ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ *Id.* at 6. There are multiple flaws and contradictions in the picture NGData attempts to paint to avoid producing relevant information about its current customers.

First, if an accused infringer could avoid producing highly relevant information such as customer identities and agreements simply by submitting a declaration ████████████████████

████████████ this would set a rather stunning precedent and would change intellectual property litigation as we know it. If this were the standard, this information would rarely, if ever, be produced in patent infringement or trade secret cases. Again, it is telling that NGData was ***unable to cite a single patent or trade secret case in support of its position***. The only case NGData was able to cite, *Schick*, involved an individual suing a company for nuisance who simply needed to

determine what chemicals were allegedly causing him harm. This case is not applicable here for the reasons described above.[1]

Additionally, NGData's claims about the ██████████████████████████████ ████████████████ It is incredibly common for software companies to be named as defendants in patent infringement lawsuits. It is also incredibly common for these software companies to have "highly sophisticated" customers, including financial services companies. The notion that these highly sophisticated customers ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

NGData's arguments are contradictory and weak. According to NGData's CEO, the customers are ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ NGData's arguments do not pass the "sniff test"[2] and there is a reason there is no case law to support its position. Again, if an accused infringer could avoid producing relevant customer information simply by ██████████████████████████ then this information would never be discoverable.

**C.    *This is yet another attempt by NGData to avoid producing highly relevant information.***

---

[1] *See* Supra Section II.A.

[2] It is worth noting that the CEO, Doug Gross, who has submitted the declaration in support of NGData's Motion is the same person who was knowingly and brazenly soliciting Plaintiff's confidential and trade secret information.

Since the inception of this case, NGData has been intractable and dilatory about producing even the most basic relevant discovery. As the Court may recall, Plaintiff has had to engage in multiple, repetitive meet and confers with NGData and ultimately filed motions to compel for NGData to simply agree to an ESI Order, provide answers to basic interrogatories, and produce core technical documents as required under the Local Rules. Indeed, NGData is currently in violation of this Court's Order (D.I. 148), which ordered that "[n]o later than January 10, 2025, [NGData] shall complete document production not covered by the ESI Order. This includes, but is not limited to, all documents responsive to plaintiffs first set of requests for production nos. 4-5, 10-13, 15-17, 24, 26-30, 32-33, and 34." NGData has failed to comply with this Order, as is evidenced by multiple representations in NGData's Motion for Reargument about highly relevant documents in NGData's possession that have not been produced.

For example, as part of NGData's efforts to avoid producing current customer information, NGData has suddenly disclosed to the Court and Plaintiff that it "███████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████." (Motion for Reargument at 4).  NGData goes on to disclose that it "███████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████." *Id.* at 5. To date, this information has not been produced.

The Parties met and conferred (as ordered by the Court in D.I. 148) about this information for over an hour on January 9, 2025. Plaintiff's request was simple—produce the reports and/or information NGData has in its possession, custody, or control that reflects this information. NGData refused and insisted it would only respond to interrogatories describing the information.

Ultimately, NGData did provide responses to interrogatories on January 16, 2025, which included providing a scrubbed down narrative response and identifying a single document under Federal Rule 33(d). NGData has still failed to produce, however, all of the information it claims to have about ████████████████████████████████████████

Similarly, NGData's CEO details in his declaration a ███████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ Gross Decl. at ¶ 8. To date, the documents described by

NGData's CEO (█████████████████████████████████████) have not been produced.

NGData's strategy in this litigation is clear. Delay and avoid producing as much relevant discovery as possible until the clock runs out. Close of fact discovery in this case is April 18, 2025, opening expert reports are due May 2, 2025. Plaintiff needs this information to prosecute its case against NGData.

## III.    CONCLUSION

For the above and foregoing reasons, Plaintiff requests NGData be ordered to immediately produce the agreements (and related documents) it has with its current customers related to the Accused Products, as well as the information NGData describes it has relating to ███████████████

████████████████████████████████████████

/s/ Travis S. Hunter

OF COUNSEL:

Conor M. Civins
Michael Chibib
BRACEWELL LLP
111 Congress Ave. Suite 2300
Austin, Texas 78701
(512) 472-7800
conor.civins@bracewell.com
michael.chibib@bracewell.com

Travis S. Hunter (#5350)
Katharine L. Mowery (#5629)
Gabriela Z. Monasterio
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, DE  19801
(302) 651-7700
hunter@rlf.com
mowery@rlf.com
monasterio@rlf.com

*Attorneys for Plaintiffs Ignite Enterprise Software Solutions, Inc. and IgniteTech CX Solutions, LLC*

Dated: January 17, 2025

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Plaintiffs' Response To NGData's Motion For Reargument Regarding The Court's Order Granting Plantiffs' Motion To Compel (D.I. 148), Or Alternatively, NGData's Motion For A Protective Order* was caused to be served on January 17, 2025, upon the following counsel as follows:

**VIA EMAIL**

Warren K. Mabey, Jr.
Fish & Richardson P.C.
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
(302) 652-5070
mabey@fr.com

Bret T. Winterle
Carl E. Bruce
Michael A. Vincent
Lance E. Wyatt
Philip G. Brown
Fish & Richardson P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070
winterle@fr.com
bruce@fr.com
vincent@fr.com
wyatt@fr.com
pgbrown@fr.com

/s/ Gabriela Z. Monasterio
Gabriela Z. Monasterio  (#7240)